# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAGISTRATE MAHDI SUFI EL,** : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **PEOPLE'S EMERGENCY CENTER,** *et al.*, : <br> Defendants. : | **CIVIL ACTION NO. 19-690** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                              **February 6, 2020**

Plaintiff, who is proceeding *pro se*, filed this lawsuit against Defendants People's Emergency Center ("PEC"), WPEB Community Radio Association, Lancaster Avenue Autonomous Zone ("LAVA"), Philadelphia Housing Authority Development Corporation ("PHADC"), Robert H. Messerman, and Ian Winter. He alleges violations of the Fair Housing Act, the Americans with Disabilities Act, and the federal criminal code. Defendants PEC, WPEB, and PHADC have moved to dismiss.

### I. BACKGROUND

Plaintiff's claims arise out of four events, three of which are apparently related to an earlier lawsuit he pursued before this Court, *Magistrate Mahdi Sufi El v. People's Emergency Center* ("*El I*").[1] The following facts are taken from Plaintiff's Amended Complaint in this action and his Second Amended Complaint in *El I* as explained below and are assumed true for purposes of this Motion.

---

[1] Civil Action No. 17-4915 (E.D. Pa. filed Nov. 2, 2017).

### A. Eviction from 4050 Haverford Avenue

Plaintiff is a "Native American Moor"[2] and a "disabled veteran of the United States Army."[3] He applied and qualified for an apartment unit (described in the Amended Complaint as an "artist-loft at 4050 Haverford Avenue"[4]) in a new development operated by PEC.[5] When it came time to move into the unit, PEC allowed other recipients to sign their leases and receive keys, but Plaintiff was excluded for allegedly discriminatory reasons.[6] After a local reporter called PEC asking about its treatment of Plaintiff, PEC allowed Plaintiff and his family to move in, but they continued to experience discriminatory and disrespectful treatment.[7] Plaintiff sued, asserting claims similar to the ones he asserts here, including FHA and ADA violations as well as a violation of a criminal statute.[8] Some of Plaintiff's claims were dismissed and two claims under the Fair Housing Act proceeded.[9] The parties participated in a settlement conference before Magistrate Judge Carol Sandra Moore Wells.[10] The case settled and was dismissed with prejudice pursuant to Local Rule 41.1(b).[11]

While *El I* was pending, Plaintiff's landlord at 4050 Haverford Avenue commenced eviction proceedings against him.[12] Plaintiff filed a "Notice of Removal" on the docket of *El I*

---

[2] Amend. Compl. ¶ 4.

[3] *Id.* ¶ 11.

[4] *Id.* ¶ 53.

[5] Civil Action No. 17-4915, Doc. No. 16 at 1–2.

[6] *Id.* at 2.

[7] *Id.* at 2–3.

[8] Civil Action No. 17-4915, Doc. Nos. 1, 3.

[9] Civil Action No. 17-4915, Doc. Nos. 16, 17.

[10] Civil Action No. 17-4915, Doc. No. 24.

[11] Civil Action No. 17-4915, Doc. No. 25.

[12] Civil Action No. 17-4915, Doc. No. 6 ¶ 1.

attempting to incorporate the issue of his eviction into that lawsuit.[13] Plaintiff was eventually evicted during the pendency of *El I*,[14] six months before the settlement conference and dismissal of that case.[15]

Here, Plaintiff contends that his eviction was "unlawful[]."[16] Defendant Messerman, "an attorney firm that is a contracted agent for the City of Philadelphia,"[17] allegedly sent an agent (his "mercenary") to remove Plaintiff and his family from the premises, who forced them out "at gunpoint."[18] Plaintiff believed that the docket sheet from *El I*, which he had posted on the door of his unit, should have operated as an "automatic stay-of-eviction," but Defendants Messerman and PEC refused to accept it and proceeded with the eviction anyway.[19] Messerman's agent called the Philadelphia police for "back-up" and Defendants PEC and Messerman conducted an "ad hoc interrogation."[20] Defendants PHADC, PEC, and Messerman then "work[ed] in collusion and in coordination" to throw away Plaintiff's possessions that remained in the apartment, including "furniture, priceless artwork, household items" and food.[21] The eviction left Plaintiff and his family homeless during "an extremely harsh winter season."[22] Plaintiff "filed a complaint and claim for injury and property loss" with the City of Philadelphia Risk Management

---

[13] *Id.*

[14] Amend. Compl. ¶ 15.

[15] *Id.*; Civil Action No. 17-4915, Doc. No. 25.

[16] Amend. Compl. ¶ 15.

[17] *Id.* ¶ 6.

[18] *Id.* ¶ 15.

[19] *Id.* ¶ 16–18.

[20] *Id.* ¶ 19.

[21] *Id.* ¶ 20.

[22] *Id.* ¶ 21.

3

Department based on the eviction, and Plaintiff alleges that the Department determined that Defendant PHADC was responsible for Plaintiff's losses.[23]

### B. WPEB Dispute

Plaintiff alleges that as part of the resolution of *El I*, Judge Wells issued an order requiring Defendant WPEB Community Radio Association to give him keys to the radio station.[24] In collusion with PEC, WPEB refused to do so and "ejected" Plaintiff from the building when he came to "complete the key-recipient form and collect the key-card."[25]

### C. "The Bank" Dispute

Plaintiff alleges that as part of *El I*, Defendant PEC was ordered "to discontinue with barring Plaintiff's access to their public sites."[26] Since then, however, Plaintiff contends that PEC has refused to allow him to reserve a space called "the Bank" for events.[27] PEC told Plaintiff the Bank was "leased out every working day of the year to another organization."[28] Meanwhile, PEC was continuing to host events at the Bank itself, "partnering with various community groups and artists, and numerous community stakeholders except the Plaintiff."[29]

### D. LAVA Space Dispute

Finally, in a matter that appears unrelated to any of the issues in *El I*, Plaintiff complains of being denied access to a location he calls the "LAVA space." LAVA is a "collective"[30] and

---

[23] *Id.* ¶ 23.
[24] *Id.* ¶ 54–55. WPEB was not a party to *El I*.
[25] *Id.* ¶¶ 54–55, 59–60.
[26] *Id.* ¶ 24.
[27] *Id.* ¶ 56.
[28] *Id.* ¶ 57.
[29] *Id.* ¶ 58.
[30] *Id.* ¶ 39.

4

"No[t] For Profit Corporation"[31] in which Plaintiff apparently rented space to run a business.[32] Plaintiff seems to allege that Defendants LAVA and Ian Winter, a LAVA board member, spread "slanderous, hearsay rumors" that Plaintiff is homophobic.[33] Based on that rumor, Defendants LAVA and Winter denied Plaintiff access to his office in the LAVA space[34] and to common areas of LAVA's building.[35] Plaintiff also makes a conclusory allegation that PEC "collud[ed] and conspir[ed]" with Defendants LAVA and Winter to bar Plaintiff from the LAVA space.[36]

Plaintiff also alleges that starting several years ago, Defendant Winter "created an alternative website" to prevent Plaintiff and his "staff members from accessing the LAVA [s]pace schedule" and booking events there.[37] Defendant Winters allegedly used the alternative website to "swindle patrons and concert goers" of the LAVA space "out of extra money" by charging extra deposits and fees that "cheated hundreds of attendees out of a safe and fun time at Plaintiff's programs."[38]

### E. Procedural Background

The Court granted Plaintiff leave to proceed *in forma pauperis* and ordered the United States Marshal for the Eastern District of Pennsylvania to serve the summonses and Complaint on the defendants.[39] Plaintiff's original Complaint asserted claims against Cherry Hill Township based on an arrest by the Cherry Hill Police Department; finding no basis for venue in this

---

[31] *Id.* ¶ 9.

[32] *Id.* ¶¶ 24–25, 32, 38, 42, 48–49.

[33] *Id.* ¶¶ 34–35.

[34] *Id.* ¶¶ 32, 42.

[35] *Id.* ¶¶ 36, 49.

[36] *Id.* ¶ 25.

[37] *Id.* ¶¶ 42–44.

[38] *Id.* ¶¶ 43–44.

[39] Doc. No. 4.

District, the Court transferred those claims to the District of New Jersey.[40] That court *sua sponte* dismissed Plaintiff's claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), finding that Plaintiff had sued only the municipality of Cherry Hill and had not alleged any facts that could support municipal liability.[41] When Plaintiff failed to amend his Complaint, the court dismissed it with prejudice and closed the case.[42]

Meanwhile, as to the claims remaining in this Court, Plaintiff amended his Complaint[43] and Defendants PEC and WPEB were served by the U.S. Marshal.[44] The remaining summonses, however, were returned unexecuted after the Marshal was unable to effect service.[45] (Defendant PHADC nevertheless learned about the lawsuit and has filed a Motion to Dismiss on the merits while maintaining that no proper service was made.[46]) Plaintiff did not attempt service again on the remaining Defendants and has not responded to the pending Motions to Dismiss, which were filed six months ago.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to demonstrate that he is entitled to relief.[47] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the

---

[40] *Id.*

[41] Civil Action No. 19-7808 (D.N.J. filed Feb. 19, 2019), Doc. No. 6.

[42] Civil Action No. 19-7808 (D.N.J. filed Feb. 19, 2019), Doc. No. 7.

[43] Doc. No. 5.

[44] Doc. No. 16.

[45] Doc. Nos. 6, 17, 21.

[46] Doc. No. 23 at 2 n.1.

[47] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).

complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[48] Courts are not, however, bound to accept as true legal conclusions framed as factual allegations.[49] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[50]

With those standards in mind, a complaint filed *pro se* is "to be liberally construed."[51] A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."[52] Nonetheless, *pro se* plaintiffs are still subject to basic pleading requirements.[53] The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.[54]

The Court of Appeals has held that "motions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."[55] Although Plaintiff has not responded to the Motions to Dismiss, the Court will consider the merits of the three Motions to Dismiss. Similarly, the Court will consider the merits of his claims against the remaining Defendants who have not been served and determine whether those claims should proceed.

---

[48] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[49] *Twombly*, 550 U.S. at 555, 564.

[50] *Id.* at 570.

[51] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[52] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[53] *Rhett v. New Jersey State Superior Court*, 260 F. App'x 513, 515 (3d Cir. 2008).

[54] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

[55] *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x. 223, 226 (3d Cir. 2012) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

### III. DISCUSSION

#### A. Fair Housing Act Claims: 42 U.S.C. §§ 3604, 3617, 3631

Plaintiff asserts claims under three provisions of the Fair Housing Act. Count I alleges that Defendants PEC, PHADC, and Messerman violated § 3604 by unlawfully evicting Plaintiff from his apartment.[56] Count I also alleges that Defendants LAVA and Winter violated § 3604 by denying Plaintiff access to the LAVA space, "illegally shutting off utilities unannounced," and "violently interrupting meetings with dubious eviction and notice to vacate paperwork."[57] Count II alleges that Defendants PEC, LAVA, and Winter violated § 3631 by "conspir[ing] and collud[ing] to displace Plaintiff from his most known place of business," which seems to be located within the LAVA space, and by "frequently harass[ing], threaten[ing] with physical harm, and mock[ing] Plaintiff."[58] Count IV alleges that Defendants LAVA and Winter violated § 3617 by "illegally shut[ting] off the water from the outside of Plaintiff's residence and place of business" and barring his access to a "common area for work."[59] Counts II and IV both appear to concern Plaintiff's access to the LAVA space, not his apartment.

##### i. Count I: § 3604

The Fair Housing Act prohibits discrimination on the basis of "race, color, religion, sex, familial status, or national origin" in a variety of real estate-related transactions.[60] Plaintiffs may

---

[56] Amend. Compl. ¶¶ 30–31; *see* 42 U.S.C. § 3604.

[57] *Id.* ¶¶ 32–33.

[58] *Id.* ¶¶ 38–39.

[59] *Id.* ¶¶ 48–49.

[60] 42 U.S.C. § 3604.

state a claim under the FHA by alleging either that a defendant discriminated intentionally or that a defendant's actions had a discriminatory effect.[61]

Claim preclusion may be raised in a Rule 12(b)(6) motion to dismiss.[62] Where preclusion is an issue, "and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication" in evaluating the preclusion issue.[63] "Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion."[64]

The claims in Count I arising out of Plaintiff's eviction are the same as the ones Plaintiff brought in his first lawsuit, which was dismissed after the parties reached a settlement.[65] As part of the settlement agreement, Plaintiff released all claims occurring before July 20, 2018—the date the release was executed—against all the defendants in that case, including PEC.[66] The eviction occurred on January 11, 2018. As to PEC, therefore, these claims are barred from relitigation by the prior case, so they will be dismissed with prejudice.

As to Defendants Messerman and PHADC,[67] who were not named as defendants in Plaintiff's first lawsuit, this claim does not appear on its face to be precluded by the earlier

---

[61] *Doe v. City of Butler*, 892 F.2d 315, 323 (3d Cir. 1989).

[62] *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972).

[63] *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010).

[64] *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

[65] Civil Action No. 17-4915, Doc. No. 25.

[66] PEC's Mem. Supp. Mot. to Dismiss, Ex. B, ¶ 6.

[67] PHADC is not referenced in any of the counts of the Amended Complaint, but the introductory "General Allegations" assert that PHADC "work[ed] in collusion and in coordination" with Defendants PEC and Messerman to remove Plaintiff and his family from their apartment. Amend. Compl. ¶ 20. This allegation is conclusory, as Plaintiff alleges that it was Defendants Messerman and PEC that carried out the removal and Defendant PEC alone that threw out Plaintiff's belongings after removing him. The dearth of factual allegations about PHADC in the Amended Complaint other than a conclusory allegation of conspiracy is a separate reason for dismissing the

9

litigation. On the merits, however, Plaintiff alleges no facts that suggest these defendants acted in a discriminatory manner or that their actions had a discriminatory effect.[68] He alleges what the defendants did, but not why they did it or whether their actions had a disparate impact. The Fair Housing Act does not prohibit all evictions—it prohibits only *discrimination* in housing-related transactions.[69] Therefore, this claim will be dismissed without prejudice.

Count I also alleges that Plaintiff was improperly denied access to the LAVA space.[70] As far as the Court can tell, however, the LAVA space is not a residential facility—it is a "place of business"[71] and "community space"[72] where Plaintiff had an "office"[73] and also used a "common area for work."[74] Plaintiff also refers to "patrons and concert goers" at the LAVA space and to problems with "booking events" there,[75] which further suggests it is non-residential. The Fair Housing Act applies only to "dwelling[s]," not to commercial spaces.[76] Therefore, all of Plaintiff's claims under the Fair Housing Act relating to the LAVA space will be dismissed without prejudice.

---

Amended Complaint without prejudice. *See Loftus v. Se. Pa. Transp. Auth.*, 843 F. Supp. 981, 986–87 (E.D. Pa. 1994) (citing *Rose v. Bartle*, 871 F.2d 331, 366–67 (3d Cir. 1989)).

[68] To be clear, the Court does not weigh factual issues at this stage; the Amended Complaint contains no factual allegations at all relating to discriminatory intent or effect, other than to state that Plaintiff is a "Native American Moor," Amend. Compl. ¶ 5, and is "disabled," *id.* ¶ 11.

[69] *See Lane v. Cole*, 88 F. Supp. 2d 402, 405 (E.D. Pa. 2000) (eviction because of racial discrimination violates the FHA).

[70] Amend. Compl. ¶¶ 32–35.

[71] *Id.* ¶ 38.

[72] *Id.* ¶ 36.

[73] *Id.* ¶ 42.

[74] *Id.* ¶ 49. Plaintiff also alleges that Defendants LAVA and Winter denied him access to his "residence," *id.* ¶ 48, and "domicile," *id.* ¶ 32, but it is unclear whether Plaintiff means to allege that the LAVA space was his residence at some point, or whether he means that LAVA and Winter were also involved in the dispute over the apartment at 4050 Haverford Avenue.

[75] *Id.* ¶¶ 43–44.

[76] 42 U.S.C. §§ 3602(b), 3604; *see Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del. 2006) ("The FHA covers residential real estate and not commercial transactions.").

### ii. Count II: § 3631

Section 3631 is the criminal penalty provision of the Fair Housing Act. There is no private right of action under this criminal statute,[77] meaning only the government and not private individuals may sue to enforce it.[78] Therefore, this claim will be dismissed with prejudice as to all defendants.[79]

### iii. Count IV: § 3617

Section 3617 of the FHA forbids coercing, intimidating, threatening, or interfering with "any person in the exercise or enjoyment of" any rights to engage in housing-related transactions protected by the Fair Housing Act's other substantive provisions.[80] To state a claim under this provision, a plaintiff must allege "that (1) [he] is a protected individual under the FHA, (2) [he] was engaged in the exercise or enjoyment of [his] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [his] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate."[81]

As noted, Plaintiff does not allege that any of the acts described in the Amended Complaint were discriminatory. Additionally, the claims in Count IV seem to be related to the LAVA space, which, as explained, does not appear to be a covered space under the FHA. Therefore, this claim will also be dismissed without prejudice.

---

[77] *Pondexter v. Allegheny Cty. Hous. Auth.*, No. 11-857, 2012 WL 3611225, at *9 (W.D. Pa. Aug. 21, 2012).

[78] *See Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also United States v. Piekarsky*, 687 F.3d 134 (3d Cir. 2012).

[79] Additionally, as explained, the FHA covers only residential spaces, so Count II's allegations regarding the LAVA space do not state a violation of § 3631.

[80] 42 U.S.C. § 3617.

[81] *El I*, 315 F. Supp. 3d at 842 (quoting *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)).

### B. Count III: "Frauds and Swindles," 18 U.S.C. § 1341

Plaintiff brings additional claims related to the LAVA space under 18 U.S.C. § 1341. There is no private right of action under this criminal statute.[82] Thus, this claim will be dismissed with prejudice as to all defendants.

### C. Count V: Americans with Disabilities Act, 42 U.S.C. § 12203

Plaintiff also asserts a claim under 42 U.S.C. § 12203, the retaliation provision of the Americans with Disabilities Act. To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) protected conduct; (2) adverse action "either after or contemporaneous with" the protected conduct; and (3) a "causal connection" between the protected conduct and the adverse action.[83]

#### i. Eviction Claims

Plaintiff alleges that his eviction violated the ADA's retaliation provision.[84] Read liberally, the Complaint alleges that Plaintiff engaged in protected conduct when he filed his complaint in *El I* claiming a discriminatory refusal to rent to him. It also alleges that Defendants PEC and Messerman took adverse action against him by evicting him. All of this activity, however, revolved around Plaintiff's home, the "artist-loft at 4050 Haverford Avenue."[85] Residential facilities are not covered by the ADA.[86] Filing the *El I* complaint therefore did not amount to "oppos[ing] any act or practice made unlawful by" the ADA or to "participat[ing]

---

[82] *Tank v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1020 (D. Del. 2011).

[83] *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

[84] Amend. Compl. ¶ 53.

[85] *Id.*

[86] *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n.8 (3d Cir. 2006) (noting that the ADA's public accommodations provisions do not apply to residential facilities such as apartments and condominiums); *Mitchell v. Walters*, No. 10-1061, 2010 WL 3614210, at *4 (D.N.J. Sept. 8, 2010) (holding that an apartment complex was not "a place of lodging or other transient housing within the purview of the ADA").

in . . . [a] proceeding . . . under" the ADA.[87] As filing the *El I* complaint was not protected conduct, Plaintiff's eviction-related allegations do not state a claim for retaliation under the ADA, so this claim will be dismissed without prejudice.

### ii. Claims Regarding "the Bank"

Plaintiff also alleges that Defendant PEC's refusal to rent out "the Bank" to him violated the ADA's retaliation provision.[88] Reading the Amended Complaint liberally, the Bank does appear to be some kind of public accommodation that can be rented out for events. Plaintiff does not, however, allege that PEC acted in response to any particular conduct on his part, protected or not. He simply alleges that PEC was "unwilling to allow Plaintiff's usage" of the Bank while PEC hosted events at the Bank itself and partnered with other community groups, artists, and "community stakeholders" to host events there while excluding only Plaintiff.[89] Therefore, this claim will be dismissed without prejudice.

### iii. WPEB Claims

Finally, Plaintiff alleges that Defendants PEC and WPEB violated the ADA's retaliation provision by "willfully neglecting the instructions given by Magistrate [Judge Carol Sandra Moore Wells] which was to provide keys and access to Plaintiff's community radio station which is Plaintiff's main outlet."[90] Plaintiff asserts that as a result of *El I*, he obtained an order from Magistrate Judge Wells requiring the WPEB radio station to give him keys to its offices.

If WPEB had indeed failed to comply with a court order, that might warrant some form of relief. It would not, however, constitute ADA retaliation, as Plaintiff has alleged no causal

---

[87] 42 U.S.C. § 12203.

[88] Amend. Compl. ¶¶ 56–58.

[89] *Id.*

[90] *Id.* ¶¶ 54–55, 59–61.

13

connection between the alleged failure to comply and any action on his part, protected or not. Moreover, even if the Court were to construe these allegations as asserting some other, potentially viable type of claim, the allegations themselves are not plausible. WPEB was not a party to *El I*, so it is unclear how or why Judge Wells might have ordered it to give Plaintiff the keys as part of that litigation, and the docket shows that Judge Wells in fact issued no such order.[91] Accordingly, this claim will be dismissed without prejudice.

### D. Claims Under 42 U.S.C. § 1983

Finally, Plaintiff notes in the "Jurisdiction and Venue" section of his Amended Complaint that he "brings this action under the Civil Rights Act, 42 U.S. Code § 1983."[92] None of the counts of Plaintiff's Amended Complaint, however, assert claims under § 1983, and Plaintiff does not explain which of his allegations are brought under that provision.[93] This conclusory invocation of § 1983 is not sufficient to state a claim. If Plaintiff wishes to assert claims under § 1983, he must file a Second Amended Complaint showing that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."[94]

### IV. CONCLUSION

Plaintiff's claims in Counts II and III will be dismissed with prejudice. Plaintiff's claims against Defendant PEC in Count I will also be dismissed with prejudice, as they are precluded by

---

[91] *See* Civil Action No. 17-4915 (E.D. Pa. filed Nov. 2, 2017). The Court considers the *El I* docket because it is undisputedly authentic and Plaintiff's claim against WPEB is based on the existence of this order. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document [on a motion to dismiss] if the plaintiff's claims are based on the document.").

[92] Amend. Compl. ¶ 1.

[93] Most likely, Plaintiff mistakenly believed he needed to invoke § 1983 as a jurisdictional basis for bringing his federal law claims under the FHA, the ADA, and the federal criminal code.

[94] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

*El I*. Plaintiff's remaining claims in Count I, as well as his claims in Counts IV and V, will be dismissed without prejudice. If Plaintiff wishes to amend the Amended Complaint further as permitted in this Opinion, he must ensure that any defendants named who have not yet been served receive proper service by providing the U.S. Marshal with completed USM-285 forms. An appropriate Order follows.