# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAGISTRATE MAHDI SUFI EL** <br> **Plaintiff,** <br> v. <br> **PEOPLE'S EMERGENCY CENTER,** *et al.*, <br> **Defendant.** | **CIVIL ACTION NO. 19-690** |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                                   **July 7, 2021**

Plaintiff Magistrate Mahdi Sufi El, proceeding *pro se*, has filed a Second Amended Complaint alleging that he was unlawfully evicted from his residence and wrongfully denied access to two separate commercial community spaces, as retaliation for activity protected under federal law. Defendants People's Emergency Center ("PEC"), Philadelphia Housing Authority Development Corporation ("PHADC"), WPEB Community Radio Association ("WPEB") have moved to dismiss.[1] For the reasons stated below, the motions will be granted.

---

[1] Plaintiff also asserts claims against Defendants Robert H. Messerman and Ian G. Winter. But despite instruction by the Court, Plaintiff has not served these defendants. Plaintiff's claims against these defendants will be dismissed, by separate order, for failure to prosecute.

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff is a 44-year-old "Native American Moor" and is a Moorish missionary.[3] Plaintiff alleges that Defendants here retaliated against him for a lawsuit he previously pursued before this Court, *Magistrate Mahdi Sufi El v. People's Emergency Center* ("*El I*").[4]

In *El I*, Plaintiff sued his former landlord PEC and the property manager, alleging discrimination in violation of the Fair Housing Act ("FHA").[5] There, Plaintiff alleged that PEC discriminated against him by delaying his application and move-in date when he applied for housing at a newly-opened apartment building at 4050 Haverford Avenue.[6] Plaintiff further alleged that after he moved in, PEC discriminated against him by treating him differently from other tenants and denying him benefits of the building, including the use of the community room.[7]

*El I* was referred to Magistrate Judge Carol Sandra Moore Wells for settlement discussions, and Judge Wells dismissed the case with prejudice on July 20, 2018, pursuant to the agreement of counsel.[8] Plaintiff and PEC's executed settlement agreement stated that Plaintiff agreed "not to assert any claims, charges, grievances, or other legal proceedings against PEC Defendants, or any Releasee, in any forum, whether known or unknown, occurring prior to the

---

[2] The facts are as alleged in the Second Amended Complaint and assumed true for purposes of the motions to dismiss. The Court assumes familiarity with the factual and procedural history of the litigation, a more detailed recitation of which may be found in the Court's Memorandum Opinion dated Feb. 6, 2020. *See* Doc. No. 25 at 1–6.

[3] Doc. No. 31 ¶¶ 3, 11.

[4] No. 17-4915 (E.D. Pa.); *see El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 839 (E.D. Pa. 2018).

[5] Defendant PEC is the only Defendant here that was a Defendant in *El I*.

[6] *Id.* at 839–40.

[7] *Id.* at 840.

[8] *El I*, No. 17-4915, Doc. No. 25 (E.D. Pa. July 20, 2018).

date of the full execution of this Release."⁹ This release included claims based on Plaintiff's January 11, 2018, eviction from the 4050 Haverford apartment.

Plaintiff filed this action on February 19, 2019. Plaintiff's claims appear to stem from three separate occurrences. First, Plaintiff alleges that Defendants PEC, PHADC, and Messerman wrongfully evicted him from the 4050 Haverford apartment. Next, Plaintiff alleges that Defendants PEC and Winter "conspired and colluded" to evict Plaintiff from the Lancaster Avenue Autonomous ("LAVA") Space, a nonprofit-owned community space that Plaintiff used as his place of business. Finally, Plaintiff alleges that Defendant WPEB denied Plaintiff use of their radio station, where Plaintiff had previously been the host of an hour-long weekly program.

On February 6, 2020, the Court granted Defendants' motions to dismiss the First Amended Complaint.¹⁰ The Court dismissed Plaintiff's discrimination claims under the FHA against PEC for with prejudice—as waived by the settlement agreement—and dismissed his other claims without prejudice. On December 21, 2020, Plaintiff filed a Second Amended Complaint alleging retaliation.¹¹ Defendants PEC, WPEB, and PHADC have again moved to dismiss.

## II. LEGAL STANDARD

A complaint filed *pro se* is "to be liberally construed,"¹² and must be held to "less stringent standards than formal pleadings drafted by lawyers."¹³ However, *pro se* plaintiffs are

---

⁹ Doc. No. 32-4 ¶ 6.

¹⁰ *See* Doc. Nos. 25, 26; *see also* Doc. Nos. 19, 20, 23.

¹¹ *See* Doc. No. 31.

¹² *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

¹³ *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

3

still subject to basic pleading requirements.[14] Although Plaintiff has not responded to the motions to dismiss, the Court will still consider them on the merits. "[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."[15]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[17] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[18] However, the Court "need not accept as true 'unsupported conclusions and unwarranted inferences'"[19] or "legal conclusions."[20]

### III. DISCUSSION

Plaintiff has alleged retaliation under 42 U.S.C. § 3617 of the Fair Housing Act, 42 U.S.C. § 12203 of the Americans with Disabilities Act ("ADA"), and 18 U.S.C. § 1513 of the

---

[14] *Rhett v. New Jersey State Superior Court*, 260 F. App'x 513, 515 (3d Cir. 2008).

[15] *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x. 223, 226 (3d Cir. 2012) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[17] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[18] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[19] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[20] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (internal quotations omitted).

criminal code. A court interpreting *pro se* pleadings should be "willing to apply the relevant legal principle even when the complaint has failed to name it," and therefore, the Court will broadly consider each allegation to determine if Plaintiff has a cause of action.[21]

However, Plaintiff's claims under the criminal code must be dismissed because Plaintiff has no private right of action to bring claims under the criminal code.[22] Additionally, for Plaintiff to reassert the previously dismissed claims under § 12203, the Court made clear that it was necessary, in the Second Amended Complaint, to allege that he engaged in conduct protected under the ADA.[23] Plaintiff has not done so, and Plaintiff's claims under the ADA will be dismissed.

### A. The Eviction from the 4050 Haverford Apartment

Plaintiff alleges that he was wrongfully evicted from the 4050 Haverford Apartment by Defendants PEC, PHADC, and Messerman, in retaliation for the filing of *El I*. Plaintiff's eviction from this apartment occurred prior to the signing of the settlement agreement in *El I* which included a release of all claims. As the Court explained in dismissing Plaintiff's First Amended Complaint, all claims against PEC related to the eviction were encompassed within the settlement agreement and have been waived.[24]

Plaintiff also brings claims for retaliation against Defendant PHADC for allegedly playing a role in the eviction. PHADC was not a party in *El I* and not a party to the settlement

---

[21] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

[22] *See Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009), aff'd, 350 F. App'x 605 (3d Cir. 2009) ("Section 1513 is the criminal statute for retaliation against a witness, victim, or an informant. A private right of action is not recognized under this criminal statute.").

[23] *See* Doc. No. 25 at 12–14.

[24] *Id.* at 9.

5

agreement. But Plaintiff has not alleged facts showing PHADC is in any way connected to the 4050 Haverford apartment, has any relation to PEC, or has ever been Plaintiff's landlord.

The Third Circuit has held that "conclusory allegations of 'concerted action,' without allegations of fact that reflect joint action, are insufficient" to adequately plead a conspiracy.[25] Indeed, a claim for conspiracy is required to "set[] forth a valid legal theory" and "adequately state[] the conduct, time, place, and persons responsible."[26] Plaintiff only relies on the conclusory allegation that PHADC "worked in concert" with PEC "to unlawfully evict Plaintiff." Plaintiff's allegations are insufficient to state a claim against PHADC.[27]

### B. The Eviction from the LAVA Space

Plaintiff asserts that Defendant PEC conspired with Defendant Ian Winter to wrongfully evict him from his alleged place of business in the LAVA space. The LAVA space is a nonprofit-owned property located at 4134 Lancaster Avenue, Philadelphia.[28] According to Plaintiff, LAVA is managed by a Community Advisory Board, of which Winter is a member.[29]

Plaintiff alleges that PEC "conspired and colluded" with Winter to spread "defamatory, and injurious remarks, or statements" that encouraged their "affiliates" and "partners" to "bar Plaintiff's access to his traditional job site(s)" and from the "public sites" which they

---

[25] *Adams v. Teamsters Loc. 115*, 214 F. App'x 167, 175 (3d Cir. 2007).

[26] *Lynn v. Christner*, 184 F. App'x 180, 185 (3d Cir. 2006).

[27] Plaintiff also appears to attempt to bring a claim against PHADC for its attempts to evict Plaintiff's mother-in-law from her apartment. Doc. No. 31 ¶¶ 28–30. Plaintiff's mother-in-law is not a party to this action and Plaintiff, proceeding *pro se*, cannot bring claims on her behalf. See *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991).

[28] *Id.* ¶ 6.

[29] *Id.*

6

"oversee."[30] For example, Plaintiff claims that PEC and Winter worked through an individual named Ken McFarland—who "pretended not to work" for PEC—to evict Plaintiff from the LAVA space and destroy thousands of dollars of his property.[31]

As discussed above, claims for conspiracy require more than conclusory allegations of concerted action. But Plaintiff that is all Plaintiff has alleged. Neither Winter nor LAVA were involved in *El I*, and Plaintiff has offered no basis for the Court to conclude that the alleged eviction from the LAVA space was in any way related to the filing of that lawsuit. Plaintiff has also not alleged facts showing that any relationship existed between PEC and Winter or LAVA. These allegations are insufficient to state a claim.

### C. The Denial of Use of the WPEB Radio Station

Plaintiff alleges that Defendant WPEB, a nonprofit which allegedly runs a community radio station, denied him access and use of their station. Plaintiff claims to be "a senior member" of WPEB who had previously hosted an hour long weekly program, and alleges that he was told by a station manager that he would be given keys to use the radio station in their new building.[32] Plaintiff claims that when he arrived to collect the key-card, he was ejected from the premise by the executive director.[33]

Plaintiff alleges no cause of action against WPEB in the Second Amended Complaint. The First Amended Complaint did contain conclusory allegations—which the Court did not

---

[30] *Id.* ¶ 25–26.
[31] *Id.* ¶¶ 33(1), 33(2).
[32] Doc. No. 31 ¶¶ 7, 31, 35–36
[33] *Id.* ¶¶ 34–35.

accept—alleging that PEC conspired with WPEB to retaliate against Plaintiff.[34] But those allegations have been removed from Plaintiff's Second Amended Complaint, and Plaintiff has offered no facts showing that WPEB has any relationship to any other Defendant or connected in any way to a protected activity. Plaintiff's claims against WPEB will be dismissed.

IV. CONCLUSION

Although Plaintiff asserts various grievances against multiple parties, he has not sufficiently pleaded any federal cause of action. As Plaintiff was granted leave to amend after his previous dismissal and is still unable to state a claim, further leave to amend (which Plaintiff has not requested) will not be granted, as it likely would be futile.[35] Plaintiff's Second Amended Complaint will be dismissed with prejudice. An order will be entered.

---

[34] In Plaintiff's First Amendment Complaint, Plaintiff alleged that PEC and WPEB colluded and conspired against Plaintiff to deny him access to the radio station, despite an alleged order from the Judge Wells instructing WPEB to provide Plaintiff access to the station. *See* Doc. No. 5 ¶ 54. As the Court noted, it was unclear "how or why" WPEB would be ordered to provide Plaintiff access to the station, and review of the docket showed that no such order was issued. Doc. No. 25 at 14.

[35] *Kundratic v. Thomas*, 407 F. Appx. 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).